Town of Burlington *vs.* Rhoda Fosby.

One illegitimate child can inherit to another illegitimate child of the same mother.

This was an appeal from the decree of the probate court
for the district of Chittenden, in relation to the estate of
one Thomas Jackson, late of Burlington, deceased, intes-
tate, and, as the town of Burlington alleged, without
legal heirs.  The town claimed the estate as an escheat
for the use of schools.  Rhoda Fosby, on the other hand,
claimed title to it as heir at law of said Thomas, the in-
testate.

The appeal having been entered in the supreme court,
an issue was directed to be formed and tried in the county
court, to determine the question whether the said Rhoda
was legal heir of the estate.

On the trial in the county court, August Term, A. D.
1833, it appeared, that both the said Thomas, the intes-
tate, and Rhoda, the claimant, were the illegitimate chil-
dren of one Caudice, who was the slave of one Moore, a
citizen of New-Hampshire.  The county court therefore
returned the following certificate :

" In this case the court find, that the said Rhoda Fosby
is the illegitimate daughter of one Caudice, who was the
slave of one Moore, formerly resident in New-Hampshire,
and that said Thomas Jackson was also the illegitimate
son of said Caudice, and that if one illegitimate child can
legally inherit to another illegitimate child of the same

CHITTENDEN,
January,
1834.

Town of Bur-
lington
vs.
Rhoda Fosby.
mother, the said Rhoda is sister and heir at law of the said Thomas Jackson, the intestate."

*Lyman & Marsh for defendant.*—By the finding of the court below, upon the issue formed, it appears that Rhoda Fosby and the intestate were illegitimate children of the same mother, who is deceased ; and the question is, whether she succeeds to his estate—she being the only surviving relative.

1. By the 75th section of the probate act, (Stat. p. 348) it is enacted, that if the intestate have neither child, father, nor widow, " his or her brothers, sisters, and mother, " and *their legal representatives*, shall be entitled to the " whole of such intestate's estate." By the 77th section, (Stat. p. 349) it is provided that " Bastards shall be capa- " ble of inheriting and transmitting inheritance on the part " of the mother, as if lawfully begotten of such mother ;" and by the 78th section, that personal estate of intestates, " shall be distributed in the manner real estate descends " by this act."

We apprehend that Rhoda may take under the 75th section directly as a sister, even without claiming a right from the mother.

Words denoting the degrees of kindred, have always received a more liberal construction in the American States than in England ; and as the words brother and sister are not words of art like the term *heir*, they must be considered as being used in their ordinary acceptation. Now, in common parlance, illegitimate children of the same mother are always considered as brothers and sisters. The question of fraternity does not depend upon legitimacy.—But if the claimant take not directly as a sister, there seems to be no doubt that she can do so, as the legal representative of her mother. The 77th section is very clear, and seems to have been intended to place illegitimate children exactly upon the footing of those born in wedlock, as to all questions of inheritance. It interprets the words " legal representative," used in the 75th section, and makes illegitimates the legal representatives of the mother, by enabling them to inherit and transmit inheritance, on the part of the mother, as if lawfully begotten. The only rights

of succession and inheritance, possessed by children lawfully born, are to inherit and transmit inheritance ; and these rights the statute has conferred upon illegitimates.

In Connecticut, where children inherit by statute, bastards have been holden to be children, within the meaning of the act, though not made capable of inheriting by express words.  *Brown* vs. *Dye,* 2 Root, 280, (cited with approbation, 5 Con. Rep. 234,) was precisely our case, and it was there adjudged that one illegitimate succeeded to another through the mother *jure representationis.*

So in *Heath & wife* vs. *White,* 5 Con. Rep. 228, it was determined that an illegitimate succeeded to her mother, as a child.    This construction has been adopted by the most eminent jurists.—2 Kent's Com. 176.—4 do. 409.

2.  It has been objected, that Rhoda cannot succeed to the estate, because she is of the half-blood.  If she is to take, as the legal representative of the mother, this objection does not apply, nor is it a valid objection to her taking directly, under the denomination of a sister.—2 Kent, 339.—4 do. 398.—5 Con. Rep. 234.—2 Black. 217.—1 Chip. 362.—*Sheffield* vs. *Lovering,* 12 Mass. 490.

*Maeck for plaintiff.*—The question in this case for the court to decide is, can two bastards by the same mother be collateral heirs to each other?

. It is not pretended that they have any such right at common law, but it is claimed under the statute.    As we have adopted the common law by legislative enactment, and as our statute upon this subject was framed with an express recognition of the rules of the common law, and also of the meaning which the English courts had given to the terms made use of in our statute, it may not be a waste of time to call some of the prominent features to the attention of the court.

Bastards were wholly incapable of inheriting or transmitting inheritance, save to their own issue.    This rule never has been questioned by any court of law or equity in England, either in ancient or modern times.

They were not considered either at law or equity as the child of the putative father or mother.  They have not been permitted to take a device or legacy under the term

CHITTENDEN,
January,
1834.

Town of Burlington
vs.
Rhoda Fosby.

CHITTENDEN,
January,
1834.

Town of Bur-
lington
vs.
Rhoda Fosby.

child, though the estate would otherwise escheat, and the testator or testatrix had no other child, and had always treated the illegitimate as his or her child.—*Cartwright* vs. *Vawdry*, 5 Ves. Jr. 530.—6 Ves. Jr. 43.

So the court refused to supply the surrender of a copyhold in favor of a bastard, as it would, if he had been legitimate.—Prec. in Chan. p. 475.

A covenant to stand seized to the use of the bastard in consideration of natural love and affection is not good, for he is not in law considered as of the blood of the covenantor.—Dyer, 374.—6 Coke, 77.

The disabilities of bastards had not their origin in feudal times.

In 4 Pickering, p. 93, the court denied that such was the reason of the rule, and would not permit the bastard to inherit to his mother, declaring that it could not be permitted in a court of justice that an individual should trace his origin to a source deemed criminal both by law and religion. Selden, Kent, Blackstone, Swift and Reeves, and other able commentators, who not only give us the law as it is, but likewise the reason of it, insist that the policy of the rule was to discourage illicit commerce of the sexes.—Kent Vol. 2, p. 212.

The right of inheriting in this case is not conferred by the statute. If it is claimed at all, it must be by virtue of the 77th section of the probate act.—Rev. Laws, p. 349.— No such power is conferred by this section.

1. Because the right is claimed in derogation of the well-settled principles of the common law, the statute must be construed strictly, and the intention of the legislature manifest to confer a new right to the extent now claimed, or it is not given.—4 Mass. 471.—15 Mass. 205.

2. The construction we contend for, is clearly made out by comparing the whole act with this section, and the general system of legislation on the subject; and to ascertain the intention of the legislature on any given question, such comparisons are to be taken into view.—1 Mass. 146.—3 do. 21.—8 do. 423, 383.

The forms and ceremonies prescribed to the reputed father to legitimate his illegitimate, shows that the legislature touched the subject with great reluctance, and did

not intend to be liberal in removing the disabilities of bastards.—See No. 2 of same act.—Rev. Laws, p. 358.

CHITTENDEN,
January,
1834.

Town of Bur-
lington
vs.
Rhoda Fosby.

Again : It is evident in the whole act they recognized all the rules of the common law, and the signification english courts had given to the terms they used in the statute. In the 32d, 38th, 39th, 64th, 68th, and other sections of the statute, the common law is altered. They likewise considered a bastard could not take the estate of his mother or brother under the term child or brother, or otherwise he would have been well provided for in the 75th section, p. 348. If they intend the statute to be construed according to technical rules, it is the duty of the court so to construe it.—14 Mass. 88.

Full effect can be given to every clause of the statute without extending it to cover this case. The child, by this section, inherits to the mother, and the mother to the child, as they happen to survive. The words, "as if lawfully begotten of such mother," do not extend the right to other persons, but point out the manner in which they shall inherit. Thus if the bastard has issue living, the mother shall not inherit at all—if a widow and mother, the estate shall be equally divided between them, and has reference to the 75th section of the same act; or these words may be considered merely as expletives.

If it follows as a consequence from the words "as if lawfully begotten of such mother," that her bastard children can inherit to each other, and if the half-bloods are capable of inheriting, then the illegitimates are capable of inheriting to the lawful issue of the mother. If such be the case, then this absurd consequence follows : A has lawful issue by a woman who has a bastard, and dies, and his estate descends; the issue dies, and the bastard must inherit in preference to the nearest blood connexions ; and this, whether the bastard was born either before or after the death of A.

Such could not have been the intention of the legislature. It would produce great inconvenience and discord in the domestic relations, and arguments drawn from such sources, when the construction of a statute is doubtful, are entitled to great weight.—3 Mass. 221, 539.

But the defendant insists that though she cannot inherit

CHITTENDEN,
January,
1834.

Town of Bur-
lington
vs.
Rhoda Fosby.

directly as kin to the intestate, yet she can as heir to her mother. To do this, the estate must first vest in the mother as survivor. At common law, the mother never could be the heir of the child. By our statute she may, yet she must survive the child, (sec. 75); and herein again we find another meaning to the words, as if lawfully begotten of such mother, that the mother to take, must survive the child.

There is no equity on the part of the pretended heir. Her right is not founded on nature, but is the mere creation of civil policy; and the policy of permitting collaterals to inherit at all, may well be doubted.

In view of the purposes to which property is to be applied, if there are no certain heirs, the genius of our laws is favorable to escheats. But if they can inherit at all under the statute, it remains to be considered whether they can inherit any thing but the real estate. The word *inherit* must receive a technical signification. Littleton (sec. 9) says, " the word *inheritance* is not only intended where a man hath lands or tenements by descent of heritage, but also every fee simple or fee tail which a person hath by purchase, because his heirs may inherit it." But says he, "Goods and chattels cannot be turned into an *inheritance.*"—3 Inst. 19.

The opinion of the court was pronounced by

MATTOCKS, J.—The only question presented in this case is, whether " one illegitimate child can inherit to another illegitimate child of the same mother."

The 77th section of the probate act declares, that " Bastards shall also be capable of inheriting and transmitting inheritance on the part of the mother, as if legally begotten of such mother." What language could be more intelligible ? What can it mean, unless it be that among mothers and children of this description, property shall be inherited—that is, attainable by succession, and transmissible by inheritance ? This is an innovation upon the common law, and there are many such in our law relating to the descent and distribution of estates.—One in this very section, making the common law give place to the civil, in case the parents of illegitimate children afterwards intermarry.

CHITTENDEN, January, 1834.

Town of Burlington vs. Rhoda Fosby.

By the 75th section of the same act, it is enacted, " That if no father survive the intestate, his or her brothers, sisters and mother, and their legal representatives, shall be entitled to the whole of such intestate's estate." This case, on paper, does not find that the mother is dead ; but it was so stated at bar, and the briefs and arguments have gone on that ground : Therefore, so *we* consider it. This fact, however, would not alter the *principle* of the decision ; but only give Rhoda, the child, the *whole* in lieu of *half* of the estate. Now, when Thomas died, if he was "capable of transmitting inheritance on the part of his mother," why did not the estate pass to Rhoda, the sister, if the mother was not living, and if living, half to the mother and half to the sister ? Who is a child's *mother*, can be rendered certain to a certain intent ; and so also that the same woman is the mother of both children ; and so are such children always called and known as the children of such a woman : And, with the proviso in the same act, before quoted, could the legislature, in the 75th section, mean to exclude this description of persons, and confine the descent to the legitimate "brothers, sisters and mothers," thereby in effect repealing much of the beneficent and remedial provision of the 77th section, made evidently to ameliorate the condition of these unhappy persons, and thereby take the bread from the innocent surviving children, and give it to their unnatural father, the public ? We think not. But it has been argued that this anti-nuptial group cannot be considered as brother, sister and mother, within the meaning of the statute. Why not ? If the brother and sister are both related to the same mother, they must be related to each other. There has been no adjudged case cited to show that the ordinary relationship does not exist between this female parent and her offspring. One case is indeed recollected, which, if it were good law at this day, might have some bearing. It was the Duke of Suffolk's case, in the reign of Edward VI. to be found in Brooks' Abridgement, title " Administrator No. 47," and that case may be considered as nearly overruled by the infinite ridicule bestowed upon it by Lawrence Stern :

CHITTENDEN,
January,
1834.

Town of Bur-
lington
vs.
Rhoda Fosby.

"Charles, Duke of Suffolk, having issue a son by one renter and a daughter by another renter, made his last will, wherein he devised goods to his son, and died. After his death the son died also, but without will, without wife, and without child; his mother, and his sister by the father's side, (for he was born of the former renter,) then living. The mother took administration of her son's goods according to the statute of 21st Henry VIII., which directs administration to be given to the next of kin. The sister, by the father's side, contested this administration—contending, 1st, that she herself was next of kin, and 2d, that the mother was not of kin at all to the party deceased, and gained her cause on both points. The temporal lawyers— the church lawyers—*juris consulti*—the *juris prudentis*— the advocates—the judges of the consistory and prerogative courts of Canterbury and York, and with the master of the families, were all unanimously of the opinion that the mother was not of kin to the child—*mater non numeratur inter consanguineos*. If this last point in that learned case was good law, which the vulgar commentator has said is always doubted, yet in the same case it was resolved that "a sister was of kin to her brother."

It has been urged that at most Rhoda was a sister of the half-blood to Thomas. It has been decided in *Brown* vs. *Brown*, 1 Chip. R. 362, that the half-blood under our laws inherit equally with the whole-blood, both real and personal property, the same as they do personal property in England, under the statute of distribution, the feudal doctrine which excludes the half-blood from taking lands by descent, never having been adopted here. Besides as bastards are the children of no father, it would seem difficult to show that these are children of different fathers. It has also been said, that the word "inheriting," in the 77th section, can only apply to lands—such being the common law definition. But by the 78th section of the statute before mentioned, it is enacted that the personal estate of those who die intestate, shall be distributed in the same manner in which real estate descends by said act.— This removes the objection.

Finally, it has been said that the statute could never intend to give such great privileges to these illegal children,

as it would encourage libertinism and illicit intercourse between the sexes. As to the policy of the law, it is for those who make, and not for those who administer it, to judge; and when the provisions are not doubtful, there is no discretion in the court. Whether it be the most wise and humane to punish this sort of children for the impurities of their parents, is not our province to decide. But there is nothing very new or alarming in this statute. By the laws of Justinian, bastards were allowed conditionally to inherit to their mothers; and in most of the nations of Europe, with the exception of inheriting and transmitting to their illegitimate relations, they are placed on the footing of other subjects; and we refuse them the right to inherit any part of their fathers' estate, which some of the ancient nations allowed them, and only permit them in all respects to be the children of their own mothers.

The judgment of the court is, that the said Rhoda Fosby is the heir at law of Thomas Jackson, the intestate, and is entitled to the personal estate of which he died possessed.