### EMILY BERRY v. D. W. POWELL ET AL.

No. 1712. Decided October 30, 1907.

**1.—Inheritance—Bastards.**

An illegitimate sister can inherit from an illegitimate brother, both being of the same deceased mother, under article 1700, Revised Statutes. (Pp. 57–60.)

**2.—Same—Statutory Construction.**

The effect of the construction given by the courts of Virginia to the statute of that State as to the right of inheritance by illegitimate children (Garland v. Harrison, 8 Leigh, 368) and of the construction of the same statute by the Supreme Court of the United States (Stevenson's Heirs v. Sullivant, 5 Wheaton, 207) considered with reference to the effect of the subsequent adoption and later amendment of the language of such Virginia Act in Texas (Act of Congress of Texas, Jan. 18, 1840; Act of Leg., March 18, 1848; Rev. Stats., art. 1700). (Pp. 58, 59.)

Question certified from the Court of Civil Appeals, Fifth District, in an appeal from Harrison County.

*T. P. Young* and *Albert W. Webb*, for plaintiff in error.—There is but one question in the case and upon its determination depends

the case of Emily Berry and the heirs of Chas. Staples, viz: Can an illegitimate sister inherit from an illegitimate brother, both being of the same mother, in Texas? Messer v. Jones, 88 Maine, 349; Lawton v. Lane, 92 Maine, 170; Matter of Magee, 63 Cal., 414; Keeler v. Dawson, 73 Mich., 600.

Bastards are now generally allowed to inherit from or through their mother. Alexander v. Alexander, 31 Ala., 241; Storer v. Boswell, 3 Dana, 233; Jackson v. Collins, 16 B. Mon., 214; McGuire v. Brown, 41 Iowa, 650; Harrington v. Barfield, 30 La. Ann., Pt. 2, 1297; Neel v. Hibard, 30 La. Ann., 808; Rogers v. Weller, 5 Biss., 166; Riley v. Byrd, 3 Head, 20; McBryde v. Patterson, 78 N. C., 412; Estep v. Mackay, 52 Md., 592; Brown v. Dye, 2 Root, 280; Flintham v. Holder, 1 Dev. Eq., 345; Brewer v. Blouher, 14 Pet., 178; Burlington v. Fosby, 6 Vt., 83; Hepburn v. Dundas, 13 Grat., 219; Briggs v. Greene, 10 R. I., 495; Miller v. Williams, 66 Ill., 91; Garland v. Harrison, 8 Leigh., 368; In re Harrison, Mynch. Prob., 121; In re Magee, 63 Cal., 414; Rev. Stats., 1895, sec. 1700; Pettus v. Dawson, 82 Texas, 18; Ford v. Boone, 75 S. W. Rep., 353; Contra apparently, Blair v. Adams, 59 Fed. Rep., 243; 24 Am. & Eng. Enc. Law, 412 et seq. Virginia Statute: Garland v. Harrison, 8 Leigh, 368 et seq.; Hepburn v. Dundas, 13 Grattan, 218; Bennett v. Toler, 15 Grattan, 588. Missouri Statutes, in 69 S. W. Rep., 278, original Statute same as Virginia: Moore v. Moore, 69 S. W. Rep., 278, decided 1902. Ohio, same as in Virginia: Lewis v. Eustler, 4 Ohio St., 354. Vermont, almost identical with Missouri: Burlington v. Fosby, 6 Vt., 83. Rhode Island, statute substantially same as Virginia: See Moore v. Moore, 69 S. W. Rep., 278; Briggs v. Greene, 10 R. I., 495; Grundy v. Hadfield, 16 R. I., 579. Iowa, substantially same as Virginia: McGuire v. Brown, 41 Iowa, 650. Arkansas, substantially same as Virginia: Gregly v. Jackson, 38 Ark., 487. Alabama, substantially same as Virginia: Butler v. Land Co., 84 Ala., 384. Connecticut, without provisions, allows bastards to inherit to the mother or to any relative lineal or collateral on the mother's side. Dickinson's Appeal, 42 Conn., 491; Heath v. White, 5 Conn., 228; Bunn v. Dye, 2 Root, 280. Illinois, Stat. 1853: Miller v. Williams, 69 Ill., 91; Rogers v. Weller, 5 Biss., 166; Jenkins v. Drane, 121 Ill., 217; Bales v. Elder, 118 Ill., 436; Elder v. Bales, 127 Ill., 425. North Carolina, Bat. Rev. Chap., 36; McBryde v. Patterson, 78 N. C., 412; Coor v. Starling, 54 N. C., 243. Indiana Statute allows bastards to inherit from collaterals: Parks v. Kimes, 100 Ind., 148. Maine Statute, Put. Laws, 1887, chap. 14.

*S. P. Jones*, for defendants in error.—The early Virginia statute provided that "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of her." In the early case of Stevenson's Heirs v. Sullivant, 5th Wheaton, 207, the United States Supreme Court in interpreting this statute held that an illegitimate child could not inherit from the half brother. This statute was copied by Missouri, and in the case of Bent's administrator v. St. Vrain, 30 Mo., 268, it was decided by the court in 1860 that this statute did

not render an illegitimate capable of transmitting an estate by descent to his mother or to his illegitimate brothers. When this law was enacted by the Congress of Texas, it was enacted with full knowledge of the fact that the Virginia statute had received an interpretation that directly prohibited the illegitimate from inheriting from an illegitimate sister or brother, but to make it plain that it was not the intention of the Congress of the Republic of Texas to provide that the illegitimate should inherit from the illegitimate brother or sister, the real property of which such illegitimate might die possessed, the provision is added to the act that as to the personal estate they shall inherit as if they were the lawful children of their mother. Some of the authorities cited upholding the doctrine announced in this case, and in the case of Stevenson's Heirs v. Sullivant, 5th Wheaton, are as follows: 78 Ky., 390; 1 Met. (Ky.), 635; 5 Bush, 452; 30 Mo., 262; 8 Mont., 606; 2 Dana, 363; 1 Met. (Ky.), 636; 2 Disney (Ohio), 158; 11 Met., 294; 58 Pa., 56; 64 Pa., 493; 3 Dana, 233; 87 Ky., 216; 8 Mont., 606; 8 Ohio, 289; Blair v. Adams, 59 Fed. Rep., 243, and also 32 Vt., 585, overruling the 6 Vt., 83, which is cited by appellant in support of her contention.

It is impossible that the qualifying clause "and shall also be entitled to distributive shares of personal estate of any of their kindred on the part of their mother, in like manner as if they had been lawfully begotten of such mother" could have been added for the purpose of enabling or making it certain that the illegitimate should inherit from his collateral kindred personal property, for if this clause was necessary in order to give the illegitimate that right, then we have a statute that will permit him to inherit real estate from his mother (under the terms inheritance on the part of the mother) and will permit him to receive distributive shares of the personal estate of any of his kindred on the part of his mother (under the clause that he shall be entitled to distributive shares of the personal estate of any of his kindred on the part of his mother, in like manner as if he had been lawfully begotten of such mother), but denying the right to inherit personal property from his mother.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a certified question. The certificate discloses that in the suit the title to a one-half interest in a tract of land is involved and that the title depended upon the question whether Emily Berry could inherit from her brother, James McCulloch, both being illegitimate. The question is propounded in the following form: "Can an illegitimate sister inherit from an illegitimate brother, both being of the same mother, under the laws of Texas?"

The first act by our Legislature in reference to the power of inheritance by illegitimate person is found in the Act of Congress, approved 18th January, 1840; the sixteenth section of which reads as follows: "Bastards shall be capable of inheriting or of transmitting inheritance on part of their mother, and shall also be entitled to a distributive share of the personal estate of any of their kindred on the part of their mother, in like manner as if they had

been lawfully begotten of such mother." This statute, with a slight modification and a slight addition, is taken from a statute of Virginia, which reads as follows: "Bastards also shall be capable of inheriting or of transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother." In 1837 the Virginia Act came up for construction in the case of Garland v. Harrison (8 Leigh, 368). It was there held, that under the act an illegitimate brother could inherit from another illegitimate brother by the same mother. The case was a very notable one for the reason that the question had previously been before the Supreme Court of the United States in another case and had been decided differently. But the Supreme Court of Virginia declined to follow the Supreme Court of the United States. Now, if we apply the rule that when a statute is adopted from another State, it is presumed to be adopted with the construction put upon it by the courts of that State, it will be conclusive of the question. The decision of the Supreme Court of Virginia was made in 1837 and an Act was passed by the Congress of Texas in 1840. The only difference in the two enactments is that the Texas statute contains the clause "and shall also be entitled to a distributive share of the personal estate of any of their kindred on the part of their mother." This was evidently inserted for the reason that they had just adopted the common law, and it was doubtless considered that since under that system there were no heirs of personal property it was proper to insert the provision so that illegitimate children could take as distributees of such property. But in 1848 the Legislature amended the statute of "Descent and Distribution" and so changed the provision in question so as thereafter to read as follows: "Bastards shall be capable of inheriting from and through their mothers, and of transmitting estates, and shall also be entitled to distributive shares of the personal estates of any of their kindred, on the part of their mothers, in like manner as if they had been lawfully begotten of such mothers." Now from the opinions in the case of Garland v. Harrison—there were three of them, all reaching the same conclusion—it seems to us that the principal difficulty in the minds of the judges was to hold, that the words "capable of inheritance or of transmitting inheritance on part of their mother, in like manner as if they had been lawfully begotten of such mother" contemplated an inheritance from one illegitimate brother to another, and in ascertaining that it meant the same thing as if it had said, "or through the mother." They concluded that it meant the same thing as if the statute had used the words, "or through their mothers." So it seems to us that it was in order to obviate this difficulty of construction that our Legislature, in 1848, inserted the words, "or through their mothers," in the act of that year, which is our existing law upon the subject. Besides before the decision in Garland v. Harrison, *supra*, the same question had arisen in the Supreme Court of the United States in the case referred to above of "Stevenson's Heirs v. Sullivant (5 Wheat., 617), and that court had construed the act of Virginia as not allowing one bastard to inherit from a bastard brother. In their opinion the court say: "We understand it to be, that they shall

have a capacity to take real property by descent immediately or through their mother in the ascending line; and transmit the same to their line as descendants, in like manner as if they were legitimate. This is uniformly the meaning of the expression, "on the part of the mother or father," when used in reference to the course of descent of real property, in the paternal or maternal line." From which it seems to us that they placed their ruling mainly upon the technical construction of the words "on the part of their mother." It would seem, therefore, that in framing the Act of 1848 our lawmakers carefully considered the two decisions which had been rendered construing the act and carefully amended the statute so as to say that bastards could inherit from and *through* their mothers and to omit the words "on the part of their mothers" upon which the Supreme Court of the United States had based their conclusion. If the intent of the act was to enable illegitimate persons to inherit from their collateral kindred on the mother's side, could the Legislature have used words more sententious to express it? If they had said merely that "bastards shall be capable of inheriting from their mothers and of transmitting estates," it would have admitted of a question, whether the act did not allow them only to inherit from their mothers and their mother to inherit from them. But evidently the words, "through their mothers," mean more than this. They must mean that the inheritance should be considered as passing to the mother and through her to her illegitimate heir. It conveys the idea, that the transmissible blood of inheritance should be considered as passing to her, and when as in case of her death she could not take, through her to those who are her heirs under the law, namely, an illegitimate child. In this respect our law is fuller and more explicit than that of any other State so far as we have found. A statute of Indiana provides: "Illegitimate children shall inherit from the mother as if they were legitimate; and through the mother, if dead, any property or estate, which she would have taken by gift, devise or descent from any other person." In Parks v. Kimes (100 Ind., 148), the Supreme Court of Indiana held that an illegitimate daughter inherited from an illegitimate son, the mother being dead. This is very clear under the Indiana statute, but we cite the case as illustrative of the use of the words, "through the mother," as used in statutes of inheritance. In Arkansas, Vermont, Rhode Island and Missouri they have statutes in almost the same language as that of Virginia, and the Supreme Court of each of these States hold an illegitimate brother may inherit from another illegitimate brother, the mother being dead. (Gregley v. Jackson, 38 Ark., 487; Town of Burlington v. Fosby, 6 Vt., 83; Briggs v. Greene, 10 R. I., 495; Moore v. Moore, 69 S. W. Rep., 278.) In the case last cited the question is very ably and elaborately discussed and all the authorities reviewed.

The courts which hold that one bastard may inherit from another proceed upon the broad ground that the intention of the Legislature was to abrogate the rigorous rule of the common law with reference to illegitimate children and to confer upon them a capacity for inheritance more in accordance with the principles of natural

justice. Hence they have construed the statutes liberally so as to effectuate that intention.

Under the Spanish law, to which we were subject until 1840, bastards inherited from their collateral kindred. (Schmidt's Law of Spain and Mexico, article 1255, et seq.) Is it to be supposed that the Congress of 1840, who had lived under the humane laws of Spain with respect to illegitimate children, intended any less liberal provisions with respect to this class of unfortunates? We think not. We think the act of 1840, based upon the Virginia statute as construed by the Supreme Court of that State, was deemed sufficient to invest bastards with inheritable blood on the mother's side; and that in the amendment of 1848, the statute was intended to be so changed as to remove all doubt upon the question.

We answer the question in the affirmative.