Rhode Island Hospital Trust Co., Tr. *vs.* Normand
Morrison Hodgkin *et al.*

· MAY 11, 1927.

Present: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  *Probate Law.   Guardian and Ward.   Agreement between Guardian and
Adverse Claimants.*

Gen. Laws, 1923, cap. 363, sec. 24, providing that a probate court "may
authorize executors, administrators and guardians to submit to arbitration,
or to adjust by compromise, any claim in favor of or against the estates by
them represented" will not be construed to oust the supreme court of its
jurisdiction to determine the prayer of a trustee for instruction relative to
the trust estate, under Gen. Laws, 1923, cap. 339, sec. 35, notwithstanding
the provisions of cap. 362, sec. 19, that there shall be no appeal from the
advice of the probate court in certain cases.

(2)  *Trusts.   Infants.*

As it is the duty of all courts carefully to guard the interests of infants, the
supreme court will not without consideration adopt as conclusive the action
of an inferior tribunal with respect to questions affecting the rights of an
infant, in a matter which by statute has been placed in the exclusive
jurisdiction of the supreme court.

(3)  *Construction of Statutes.   Illegitimacy.*

It is the established doctrine in this State that the statute relative to the.
rights of illegitimates shall be given a liberal construction to effectuate its
remedial purpose.

(4)  *Illegitimacy.*

Under the Rhode Island statute a child born out of wedlock is the legal child
of its mother and is to be so regarded with reference to the provisions of
other statutes dealing generally with the legal rights of "children or
descendants."

(5)  *Wills.   Trusts.   Children.   Illegitimacy.*

The expression in a will creating a trust "to the children or other descendants
of my daughter," would include illegitimate as well as legitimate children
or descendants of the daughter, in the absence of provision in the will to the
contrary.

Bill in Equity for instructions.   Certified under statute.

Sweetland, C. J.   This is a bill in equity in which the
complainant, trustee under the will of William L. Beckwith
late of Providence, deceased, asks for instructions as to the
distribution of the trust property now held by it in trust.

By the terms of the trust, which are essential to the matter before us, the trustee is directed to apply the net income of the trust estate for the support and maintenance of the testator's mother and the testator's daughter, Lorania C. Beckwith. The testator's mother predeceased his daughter, and the will provides that in such event the trustee shall pay the net income of the trust estate to the daughter during her life, and upon the daughter's death "make full and absolute conveyance of all the property then held in trust hereunder free and clear of the trust hereby created to the children or other descendants of my said daughter," . . . "and in default of such children or other descendants then to the heirs at law of my said mother."

The testator's daughter, Lorania C. Beckwith, died February 24, 1925, leaving a child, the infant respondent Hodgkin, born out of wedlock shortly before her death. The other respondents, referred to at the hearing as the Anthony heirs, claim that they are the heirs at law of the testator's mother within the meaning of the terms of the trust. The infant respondent, through his guardian, on the one hand, and the Anthony heirs upon the other, each claimed the entire residue of the trust property. It appears that there are two other trust estates, not now before us, as to which the same claims have been made by these respondents, one a trust created by deed of Lorania C. Beckwith, and the other a trust created by the will of the mother of William L. Beckwith. It further appears that said infant through his guardian and said Anthony heirs entered into an agreement whereby the infant was to release all claims under the trust deed of his mother and under the testamentary trust of his great grandmother, and the Anthony heirs were to release all claims under the trust created by the will of William L. Beckwith, now before us, save as to the sum of $100,000 with regard to which it was agreed that a fund of that amount should be set aside from that trust by the trustee and held by it upon a new trust created by said agreement. The essential terms of the new trust were to be that the

income of the trust fund of $100,000 so created should be paid to three members of the Anthony heirs therein named and to the survivors or survivor of them during life; after the death of the survivor said income should be paid to the respondent Hodgkin during his life, and upon his death the trust fund should be held "in such manner as the said Normand Morrison Hodgkin shall have appointed after having attained lawful testamentary age." In default of such appointment the trustee should pay the trust fund to the lawful children of said Hodgkin or their descendants, and in default of children or other descendants of said Hodgkin, then pay said trust fund to certain named representatives of the Anthony heirs. There was a further provision in said agreement that all expenses, disbursements and fees, including the counsel fees of the Anthony heirs should be paid from the residue of the trust fund created by will of William L. Beckwith after setting aside said $100,000.

(1)    In reliance upon the provisions of Section 24, Chapter 363, Gen. Laws 1923, the guardian of the infant respondent obtained from the Municipal Court of Providence authority to enter into the aforesaid agreement on behalf of said infant. The respondents now urge that this court should instruct the complainant trustee to make conveyance of the trust estate in its hands created by the will of William L. Beckwith in accordance with said agreement authorized by the Municipal Court.

Section 24, Chapter 363, Gen. Laws 1923, upon which the respondents rely is as follows: "Sec. 24. The probate court may authorize executors, administrators, and guardians to submit to arbitration, or to adjust by compromise, any claim in favor of or against the estates by them represented." There is some warrant for the claim made before us that, in view of the history of this section as it relates to guardians and by reason of the provisions of Section 19, Chapter 362, Gen. Laws 1923, there is no appeal from the action of a probate court properly taken under such authority as the General Assembly intended to confer by said

Section 24, Chapter 363, Gen. Laws 1923, and that such action is conclusive.

By the provisions of Section 35, Chapter 339, Gen. Laws 1923, the determination of "all bills in equity for the construction of any will or trust deed or for instructions relative to any will or trust deed," are excluded from the jurisdiction of the superior court although that court has general jurisdiction in equity. Such bills must be certified to this court for determination. The position of the respondents is that, even in a town which does not elect a probate judge, and where the probate court is the town council, composed of laymen, a probate court may, by its decree approving an agreement between an infant and others making adversary claims to a trust estate, conclusively oust this court from jurisdiction to independently determine the prayer of a trustee for instruction relative to such trust estate under the terms of the trust. Section 24, Chapter 363, Gen. Laws 1923, should not be given such construction and effect.

It is the duty of all courts carefully to guard the interests of infants. We shall not by our decree, without consideration, adopt as conclusive the action of an inferior tribunal with respect to the very important questions affecting the rights of this infant, in a matter which the General Assembly has placed exclusively in our jurisdiction.

A case may arise in which this court, in instructing a trustee as to the distribution of a trust fund, may take into consideration and give effect to an agreement entered into by all persons who may possibly be interested in such distribution, including an infant, when the agreement is plainly prudent and for the best interests of the infant. Such a case is not presented here.

The question which caused the complainant trustee to file this bill for instruction arises by reason of the uncertainty of the trustee as to the rights of the infant respondent Hodgkin under the terms of the trust. By the common law an illegitimate child is held to be without kindred, except his lineal descendants. He is not even a

child of the mother who bore him, and whose blood is in his veins. Such unfortunate child was said in the common law to be *nullius filius*. Except in Connecticut, this principle of the English common law was taken over into the common law of the states of the Union. In Connecticut it has always been held that the doctrine of the common law in this regard has no application. Without the intervention of statute it has been consistently held in that jurisdiction that an illegitimate child is in law the child of his mother with all the logical consequences which follow from such relation. In nearly, if not all of the other American jurisdictions, statutes have been enacted mitigating what has been termed the "harsh and inhumane" doctrine of the common law. Those statutes, while they generally have permitted an illegitimate child to inherit from his mother have differed somewhat in their various provisions, and there is a diversity of judicial opinion in the several states as to the rights of such children under the statute. After a somewhat extended examination of the authorities, it appears to us that the apparent conflict of opinion arises less from a difference in statutory provision than from the diametrical views which have been taken of the nature of such statutes: as to whether they should be regarded as remedial, and so to be liberally construed, or as in derogation of the common law and requiring a strict construction. There has resulted a lack of uniformity in the reports with reference to nearly every question which has arisen as to the status and the legal rights of illegitimate children under the statute.

In the early case of *Stevenson's Heirs* v. *Sullivant*, 5 Wheat. 207, the United States Supreme Court was called upon to construe a statute of Virginia identical in its language with the Rhode Island statute under consideration at bar. The court held that notwithstanding the statute an illegitimate child could not inherit from another child of the mother, as he still has neither brothers nor sisters. The court clearly adopted a strict construction of the Virginia statute. This view has been followed by the courts in some state

jurisdictions, notably in Massachusetts, and it is upon the authority of the Massachusetts cases that the respondents, Anthony heirs, largely rely. It may fairly be said, however, that by the weight of authority statutes of this nature are regarded as remedial. Later the construction of the Virginia statute came before the Supreme Court of Virginia in *Garland* v. *Harrison*, 8 Leigh 368. The Virginia court refused to adopt the construction that the Federal Supreme Court had given to the statute, and held that, aided by that statute, a bastard, under the ordinary statutes of descent would inherit from another illegitimate child of his mother begotten by another father. With reference to the effect of the statute upon the status of the child, the court said, speaking through Parker, J.: "It was the object of the law to give him a mother and to place him in all respects upon the same footing as a lawfully begotten child born of the same mother. In no other manner could the innocent offspring be purged of the sins of the mother and restored to the legal capacities which spring from the relations of parent and child." The Vermont statute is like our own. In *Burlington* v. *Fosby*, 6 Vt. 83, the court held that by the statute a bastard has been made in law the child of his mother and he becomes the brother of other children of the same mother and entitled to inherit to such other children under the general statute regulating descent, although in such general statute the rights of illegitimates are not mentioned, but in which provision is made for descent between brothers and sisters. After these decisions the Rhode Island statute came before this court in *Briggs* v. *Greene*, 10 R. I. 495. The foregoing decisions were cited to the court as well as a number in which a different conclusion had been reached, including the Massachusetts case of *Curtis* v. *Hewins*, 11 Met. 294. In that case a strict construction had been given to the Massachusetts statute providing that an "illegitimate child shall be considered as an heir of his mother and shall inherit her estate in like manner as if he had been born in lawful wedlock." The

Massachusetts court had held in that case that under the statute if "an illegitimate child dies before his mother his children are not entitled to inherit her estate." Before the decision in *Briggs* v. *Greene* there had also been established a considerable line of Massachusetts decisions giving to the statute of that commonwealth a strict construction in relation to a variety of questions which had arisen with reference thereto, including the case of *Kent* v. *Barker,* 2 Gray 535, in which it was held that under the statute an illegitimate child was not the legal child of its mother, and if unintentionally omitted in the will of its mother was not entitled to share in her estate under the statute regulating the case of a testator's unintentional omission to provide for "any of his children." This court refused to accept that doctrine. It approved the decision of the Vermont court; it commented upon the disregard of the United States case of *Stevenson's Heirs* v. *Sullivant,* 5 Wheat. 207, *supra,* by the Supreme Court of Virginia in *Garland* v. *Harrison,* 8 Leigh 368, *supra;* and accepted the authority of the latter case with reference to the construction of our own statute. *Briggs* v. *Greene* has established for us that the statute in question shall be given a liberal construction to effectuate its remedial purpose.

The question presented in *Briggs* v. *Greene* was whether, upon the death of an illegitimate intestate after the death of his mother, the estate of such illegitimate would pass to another illegitimate child of the same mother under the third provision of our statute of descent, viz.: "If there be no parent then to the brothers and sisters of such intestate and their descendants or such of them as there be." The estate of the intestate could not so pass if the disability of the common law remained. The court in substance said: at common law for want of kindred the current of descent was stopped on reaching the bastard and could not be made to flow until the blood in his veins was made capable of giving him kindred. To remove this disability and to give him kindred of the blood of his mother our

statute was passed. The court in the liberality of this opinion, although it was supported by ample authority, goes much beyond the holding of a number of courts to the effect that under such a statute the legislature has provided solely for the inheritance specified therein, but in no other respect has it changed the condition of the illegitimate child. He is still of no family. Our court having thus construed the statute as making an illegitimate child of the kindred of his mother, applied that conclusion to the question before it, and held that as the two illegitimates have each been made by the statute daughters of the same mother they were in law sisters of each other and entitled to inherit to each other directly, and not through the mother, under the third provision of our statute of descent. Thus the court held that by reason of the remedial statute the third provision of our statute of descent did not restrict the descent therein provided between brothers and sisters to legitimate brothers and sisters, but enlarged that provision to include the illegitimate children of a mother equally with her legitimate children.

The effect of the statute was again before the court in *Grundy* v. *Hadfield,* 16 R. I. 579. The question there presented was whether the children of one Elizabeth Grundy, deceased, who was illegitimate, might inherit by right of representation through Elizabeth Grundy from a brother of Elizabeth Grundy who was legitimate. The court followed the decision in *Briggs* v. *Greene, supra,* and reaffirmed the doctrine that under the statute, "The illegitimate are put upon the same footing as the legitimate for the purpose of inheritance and for this purpose are legitimate." The court held that after her decease the children of Elizabeth Grundy might inherit from her brother. *Grundy* v. *Hadfield* establishes that an illegitimate may transmit to her descendants the right to inherit by representation through her from the collateral kindred of such illegitimate.

(4)   It is plain from these cases that under the Rhode Island statute a child born out of wedlock is the legal child of its mother and is to be so regarded with reference to the provisions of other statutes dealing generally with the legal rights of "children or descendants."

It is the claim of the Anthony heirs that the testator by the provision in the trust for the "children or other descendants" of his daughter should be held to have intended solely the legitimate children or descendants of his daughter. By the rules of the common law terms of kindred when used in a statute, a will or other instrument are held to include only legitimate kindred.   The rule is equally strict as to a statute, a will or a deed.   Courts which have given a strict construction to what we have termed remedial statutes of this nature have held that in the absence of an express provision to that effect such statute can not be held to have affected the legislative intent with reference to the interpretation to be given to the words, "child," "children," "descendants," or other terms of kindred when the same are used in other statutes.   The effect of the decision of this court in *Briggs* v. *Greene, supra,* and *Grundy* v. *Hadfield, supra,* is that the legitimating or enabling act by making the illegitimate child the legal child and heir of his mother has

(5)   also without specific legislative declaration given him that standing with reference to other statutory provisions.   It might be urged that such a holding has justification from the circumstance that the remedial statute and the other statutes of descent under consideration appear in the same codification of the statutes, but no doctrine as to the construction of statutes *in pari materia* has affected the decisions of Massachusetts or other jurisdictions which have taken a like view of the nature of these statutes.

At the time the testator made his will the remedial statute and the construction placed upon it by this court had been the settled law of this State for many years.   The court had held that the legislative intent which would ordinarily attach to other statutes was modified by the

provisions of the remedial statute. We are of the opinion that it should be said, with equal reason, that the ordinary testamentary intent would be modified by the statute as construed by the Supreme Court. The testator made his will in that state of the law and in the absence of provision to the contrary, the terms "children or other descendants" as used by him would include illegitimate as well as legitimate children or descendants of his daughter.

A similar view of testamentary intent as affected by statute has been taken by other courts under statutes like our own. *Bennett* v. *Toler,* 15 Grat. 588, is a case which was thoroughly argued by counsel and considered by the court. It was there held that under a devise to a daughter for life and at her death to her children, an illegitimate child of such daughter took equally with her legitimate children. In *Harrell* v. *Hagan,* 147 N. C. 111, the court construed a will which devised land to the testator's daughter for life with limitation over if the daugher died "without leaving lawful heir." It was held that an illegitimate child of the daughter born after the testator's death and surviving her mother came within the description of a lawful heir of her mother and took an absolute estate in remainder after the mother's death. In *Dennis* v. *Dennis,* 105 Tenn. 86, the court considered a will in which a testatrix gave a residuary legacy to her heirs and distributees. The court held that an illegitimate child of the testator's sister took under the legacy.

A case illustrating the growing liberality of courts in the construction of statutes modifying the harshness of an earlier age is that of *Hasting* v. *Rathbone,* 194 Iowa, 177. It appears that in Iowa by statute an illegitimate child may not only inherit from his mother but from his father when the paternity has been proved during the father's lifetime, or the child has been recognized by him as his child. There is another statute of Iowa restricting the power of a testator to make a testamentary gift to a charitable corporation in excess of one fourth of the testator's estate after the pay-

ment of debts, if a spouse, child or parent of the testator survives him. One Hasting died unmarried, leaving a will giving his residuary estate, largely in excess of one-fourth of his entire estate, to a charitable corporation and making no provision for his illegitimate child, whom the testator in his lifetime had recognized as such. The court held that the illegitimate came within the designation of "child" in the statute, and was entitled to share in the distribution of the testator's estate.

In the case of *In re Truman*, 27 R. I. 209, this court was considering the question as to whether in the facts of that case an adopted child of the testator's brother would come within the designation of "children or issue" of such brother as those words were used in the testator's will. The court held that the adopted child should be so included. In that case, in passing, the court said: "Generally in the construction of a will a gift to 'children' will be held to apply to legitimate children only." The court's sole reference to authority was to a very illiberal decision of the House of Lords in 1873. The language of the court undoubtedly had reference to the English common law rule of construction. We do not regard the reference as throwing any light upon the decision to be made here, governed as we are by the very liberal attitude of this court with regard to the status and the legal rights of those born out of wedlock.

Counsel might cite many cases from Massachusetts and states taking a like view, which would be contrary to the former decisions of this court and to the decisions of other jurisdictions to which we have referred as in accord with our opinion. For the reasons which we have stated above the decisions of the Massachusetts court and of other courts which have taken a like attitude are without authority upon the question now before us.

To the request for instructions we reply that the trustee under the terms of the trust should now convey the property

in question to the infant respondent Normand Morrison Hodgkin formerly Lawrence Beckwith.

The parties may present a form of decree in accordance with this opinion on May 18, 1927.

*Tillinghast & Collins, Harold B. Tanner,* for complainant.

*Herbert A. Rice,* for Edward A. Stockwell, guardian of respondent Hodgkin.

*Gardner, Moss & Haslam,* for respondents Anthony *et al.*