In re ESTATE OF Peter CHERKAS.

No. 83–600–M.P.

Supreme Court of Rhode Island.

March 25, 1986.

Charles H. McLaughlin, Providence, for plaintiff.

Joseph M. DiGianfilippo, Omer A. Sutherland, Sutherland & DiGianfilippo, Inc., Woonsocket, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on a certified question propounded by the Superior Court, which question reads as follows:

"WHETHER G.L. 1956 (1969 REENACTMENT) § 33–1–8 VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY INVIDIOUSLY DISCRMINATING ON THE BASIS OF ILLEGITIMACY BECAUSE IT PROHIBITS AN ILLEGITIMATE CHILD FROM INHERITING FROM HIS NATURAL FATHER."

The facts of the case have been stipulated and may be stated briefly. The decedent, Peter Cherkas, cohabited with Rita Peloquin without the formality of a marriage ceremony. During this cohabitation two sons, Peter E. Peloquin and Albert M. Peloquin, were born to the parties. For purposes of this question, it is agreed by the parties that Peter and Albert are in fact the natural sons of Peter Cherkas and that they would be entitled to inherit from their father if they met the requirements of G.L. 1956 (1969 Reenactment) § 33–1–8, which provides:

"Children born out of wedlock.—A child born out of wedlock shall be capable of inheriting or transmitting inheritance on the part of his mother in like manner as if born in lawful wedlock. Any such child whose parents shall lawfully intermarry and shall acknowledge him as their child shall be deemed legitimate."

Consequently, the narrow question presented is whether the foregoing statute violates the equal protection clause of the Fourteenth Amendment to the United States Constitution by invidiously discriminating on the basis of illegitimacy, regardless of the persuasiveness of the proof of paternity. We answer this question in the affirmative.

Although this statute is alleged to be invidiously discriminatory in respect to children born out of wedlock, it must be remembered that the statute was adopted for the purpose of palliating the even more discriminatory rule of the common law. At

common law an illegitimate child was described as *filius nullius* and therefore not entitled to inherit from either parent. *See, e.g., Trimble v. Gordon,* 430 U.S. 762, 768, 97 S.Ct. 1459, 1464, 52 L.Ed. 2d 31, 38 (1977); *Rhode Island Hospital Trust Co. v. Hodgkin,* 48 R.I. 459, 462–63, 137 A. 381, 383·(1927). In *Hodgkin* this court declared the common-law doctrine to be "harsh and inhumane" and stated that the ameliorative statute should be construed as remedial. *Id.* at 463–65, 137 A. at 383–84.

However, in recent years the Supreme Court of the United States has dealt with the constitutionality of such ameliorative statutes in the light of the equal protection clause of the Fourteenth Amendment. In *Trimble v. Gordon,* 430 U.S. at 763, 97 S. Ct. at 1461–62, 52 L. Ed. 2d at 35, the Court considered the constitutionality of section 12 of the Illinois Probate Act, Ill. Rev. Stat. c. 3, § 12 (1973), which, like the Rhode Island statute, allowed illegitimate children to inherit by intestate succession only from their mothers. In contrast to this limitation, the statute of descent and distribution in Illinois allowed legitimate children to inherit from both parents. *Id.*

Justice Powell, in analyzing the challenged statute, considered the reliance of the Supreme Court of Illinois on the state's purported interest in "'the promotion of [legitimate] family relationships.'" *Id.* at 768, 97 S.Ct. at 1464, 52 L.Ed.2d at 38. Speaking for a majority of the Court, he described the statute as bearing only the most attenuated relationship to the asserted goal. *Id.* The Court observed:

> "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and

penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent." *Id.* at 769–70, 97 S.Ct. at 1465, 52 L.Ed. 2d at 39 (quoting *Weber v. Aetna Casualty & Surety Co,* 406 U.S. 164, 175, 92 S.Ct. 1400, 1406–07, 31 L.Ed.2d 768, 779 (1972) ).

This sweeping declaration by a majority of the Supreme Court evaluating an Illinois statute almost identical to our own is binding upon this court in respect to the validity of the challenged Rhode Island statute.

The defendant argues that the facts of *Trimble* are distinguishable from the facts of the case at bar in that the Circuit Court of Cook County, Illinois, had entered a paternity order finding Gordon to be the father and ordering him to pay support for the illegitimate daughter. In the case at bar, we have, by agreement of the parties, a stipulated acceptance of the paternity of Peter Cherkas in respect to the two children who seek to participate in the distribution of his intestate estate. However, the vice of both the Rhode Island statute and the Illinois statute was that they completely prohibit an illegitimate child from inheriting by intestacy from the father, regardless of the quantum or nature of proof of the relationship. Under Illinois law, as under Rhode Island law, an illegitimate child could be legitimized only in the event that his parents marry each other and the father then acknowledge the child as his own. Consequently, the factual difference between *Trimble* and the case at bar is not material to the issue of constitutionality of the statute.

Obviously, a state may enact statutory requirements in order to set standards for the type of proof needed to establish the relationship between a child born out of wedlock and the alleged father. For example, in *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), the Supreme Court determined to be valid a New York statute that required that an illegitimate child could inherit from the father only if a court of competent jurisdiction had, during the lifetime of the father, made an order of

filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years of the birth of the child. Although the requirements of the New York statute were rigid, the Court found that the state's interest in ensuring the accurate resolution of the claims of paternity and in minimizing the potential for disruption of estate administration was furthered by the requirement of a judicial determination during the father's lifetime. *Id.* at 271–72, 99 S.Ct. at 526, 58 L.Ed.2d at 513. Although the statute could conceivably operate unfairly in certain circumstances, Justice Powell, speaking for a plurality of the Court, determined that the statutory requirement was substantially related to the important state interests intended to be promoted thereby. *Id.* at 272–76, 99 S.Ct. at 526–28, 58 L.Ed.2d at 514–16. It should be noted that Justice Powell was joined in his opinion in *Lalli* by Chief Justice Burger and Justice Stewart. The later filed a separate concurring opinion. Justice Blackmun filed an opinion concurring in the judgment. Justice Rehnquist filed a statement concurring in the judgment (for reasons stated in his dissent in *Trimble*). Justice Brennan filed a dissenting opinion in which Justices White, Marshall, and Stevens joined. Justice Brennan was sharply critical of the New York statute, in light of the fact that the father, Mario Lalli, formally acknowledged Robert Lalli as his son. *Id.* at 277, 99 S.Ct. at 529, 58 L.Ed.2d at 517. In any event, the *Lalli* case is inapplicable to the question presented to this court since the Rhode Island statute would permit a child to be legitimized only by the procedure found invidiously discriminatory in *Trimble*.

The sweep of the various opinions of the Supreme Court of the United States in this area may be summarized by a statement of principle widely accepted in the modern era. Although there may be illegitimate parents, there is, in justice, no such person as an illegitimate child. The very term "bastard" is illustrative of the medieval notion that the sins of the father would be visited upon his hapless offspring. If such a concept was ever accepted, it is time, and past time, that it be wholly discredited and repudiated.

█ In declaring § 33–1–8 unconstitutional as violative of the equal protection clause of the Fourteenth Amendment, we do not hold that the common-law doctrine of *filius nullius* is reinstated. Obviously the common-law doctrine discriminates even more invidiously and unjustifiably against a child born out of wedlock. Consequently, the rule in Rhode Island must be that a child born out of wedlock may inherit from his father if he is able to prove by clear and convincing evidence that he is the child of the decedent. We do not suggest that it may not be within the power of the Legislature to enact other more specific requirements concerning proof of the relationship if it chooses to do so.[1] We feel that such specific requirements should be left to legislative determination and that this court should limit itself only to establishing a rule concerning the quantum of proof required to establish the relationship of parent and child on the part of one who seeks, although born out of wedlock, to inherit from an alleged father by the laws of intestate succession.

1. We should point out by way of caveat that the Supreme Judicial Court of Massachusetts in *Lowell v. Kowalski*, 380 Mass. 663, 405 N.E.2d 135 (1980), determined under the Massachusetts Constitution, which included an equal rights amendment, that a statute that required a judicial adjudication of paternity as the only permitted means of establishing the relationship was unduly restrictive. The court observed that "[w]here paternity is conceded, we see no justification for denying the right of a child to inherit from his or her natural father. The possibility

of fraud is wholly absent." *Id.* at 670, 405 N.E.2d at 141. The question presented to the Supreme Judicial Court of Massachusetts is not before us at this time, and therefore, we need not consider the effect of such a requirement and its validity under the Rhode Island Constitution. For purposes of this opinion, we are construing G.L. 1956 (1969 Reenactment) § 33–1–8 and the common-law rule which preceded it only in relation to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

For the reasons stated, the question propounded by the Superior Court is hereby answered in the affirmative. The papers in the case may be remanded to the Superior Court for further proceedings.