SALT LAKE COUNTY, a body corporate and politic, Plaintiff and Respondent,

v.

Dan L. KARTCHNER, Defendant and Appellant.

No. 14283.

Supreme Court of Utah.

June 24, 1976.

David B. Boyce, Backman, Clark & Marsh, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Salt Lake County Atty., Donald Sawaya, Kent S. Lewis, Deputy Salt Lake County Attys., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant appeals from a decree of the district court ordering him to remove 6½ feet of the west portion of a carport situated on his property. The order further requires defendant to secure a building permit for any remaining portion of the structure, pay the fee plus a penalty. We reverse the order requiring destruction of the improvement; and affirm the order requiring a building permit, payment of the permit fee and penalty.

Defendant resides in an area of Salt Lake County zoned R–1–8. During the first part of 1972, he commenced building an addition to his existing carport. During the initial stage of construction, a cruising building enforcement inspector, Mr. Williams, observed the emerging structure. Mr. Williams testified he left a notice, dated May 22, 1972, between the screen door and main door of defendant's residence. The notice stated the owner should contact the building and zoning department for a building permit. Six months later Mr. Williams returned to the neighborhood and left a second notice dated November 7, 1972, in the same manner as the first. At this time the structure was almost completed, which was conceded by Mr. Williams. The notice stated that in addition to the failure to have a building permit the structure violated the zoning standards of a 30-foot front yard setback. It further recited the carport was ten feet in violation.

On February 20, 1973, defendant was contacted personally for the first time by Marvin D. Jeffs, a county zoning inspector. The structure was completed at this time, with the exception of some touching up painting. Jeffs measured the distance from the front line of the property to the carport and determined it was 20 feet. Two days later Jeffs mailed a written notice to defendant stating the new enclosed carport had been built without a permit and was in violation of front yard requirements of Section 22–16–7, Zoning Ordinances.

The record shows a surveyor for the county located the front lot line at a point 1.3 feet from the sidewalk toward the residence. In June 1974 Mr. Jeffs measured the setback of all the houses on one side of the street, excluding the corner lots, and determined the average setback to be 26 feet. On cross-examination, Mr. Jeffs admitted that in the immediate vicinity of defendant's home there were six structures in violation of 22–16–7, and there had been no attempt to contact the owners about these violations.

Defendant testified his enclosed carport cost about $2,000. His testimony about the notices is indefinite, as is the record about when he first received a notice, with the exception of the personal contact in February 1973. Defendant did make application for a building permit and a variance. After two hearings the application for variance was refused. Defendant admitted he completed the last ten per cent of the structure after applying for the permit. He said it was his understanding it was permissible to commence a building and then procure a building permit. Defendant testified he located the wall of his carport by aligning it with his neighbor's garage next door.

Based on the foregoing evidence, the trial court issued a mandatory injunction ordering defendant to remove 6½ feet of the improvement. It should be observed that the carport is constructed parallel to the street; and the order would compel defendant to remove the west wall of the structure, the roof, and the rear wall for a distance of 6½ feet.

Section 22–16–7, Revised Ordinances of Salt Lake County, provides:

> The minimum depth of the front yard for main buildings and for private garages which have a minimum side yard of eight (8) feet shall be thirty (30) feet, or the average of the existing buildings where fifty (50) per cent or more of the frontage is developed, provided that in no case shall a front yard be less than twenty (20) feet or be required to be more than thirty (30) feet.

> All accessory buildings, other than private garages, which have a side yard of at least eight (8) feet shall be located at least six (6) feet in the rear of the main building.

■ This being a proceeding in equity, we sit in review of the facts, as well as the law. On appeal defendant contends the trial court erred in its finding there were no laches present. He urges the failure to inform him of his violation of the zoning ordinance, at the time of the first notice, in May; combined with the subsequent silence or acquiescence, until substantial completion in November, factually constituted laches and should preclude plaintiff from obtaining the harsh remedy of a mandatory injunction.

> Estoppel, waiver or laches ordinarily do not constitute a defense to a suit for injunctive relief against alleged violations of the zoning laws, unless the circumstances are exceptional. Zoning ordinances are governmental acts which rest upon the police power, and as to violations thereof any inducements, reliances, negligence of enforcement, or like factors are merely aggravations of the violation rather than excuses or justifications therefor.[1]

Ordinarily a municipality is not precluded from enforcing its zoning regulations, when its officers have remained inactive in the face of such violations. The promulgation of zoning ordinances constitutes a governmental function. This governmental power usually may not be forfeited by the action of local officers in disregard of the ordinance.[2]

It is a further contention of defendant the circumstances here render improper the granting of such a remedy as harsh as a mandatory injunction. Section 17–27–23, U.C.A.1953, as amended 1973, provides the county attorney may, in addition to other remedies provided by law, institute an injunction proceeding to enjoin, abate or remove an unlawful construction for alteration.

■ A statute of similar import[3] was interpreted in *City of Snyder v. D. M. Cogdell.*[4] There the court stated the language of the statute did not destroy the discretion of a court, and did not require the issuance of an injunction as a matter of law in every type and circumstance of violation. Further, the statute did not nullify the rule that under the circumstances of a particular case, the court, in the statute did not nullify the rule that under the circumstances of a particular case, the court, in the exercise of its equitable powers, may deny injunctive relief against the violation of a zoning ordinance. An injunction will be denied where the granting of it would be inconsistent with basic principles of justice and equity, even though it is within the scope of relief available in equity courts to enjoin violations of zoning laws.[5]

■ When a municipal corporation seeks vindication of public rights by injunction, in a court of equity, it is on the

1. 8A McQuillin, Municipal Corporations (1965, Rev.Vol.), Section 25.349, pp. 491–2.

2. *City of Mercer Island v. Steinmann,* 9 Wash.App. 479, 513 P.2d 80 (1973).

3. Article 1101h of Vernon's Revised Civil Statutes of Texas.

4. Texas Civ.App., 342 S.W.2d 201 (1960).

5. 8A McQuillin, Municipal Corporations (1965, Rev.Vol.), Section 25.344, pp. 478–9.

same footing as any private person or corporation.[6] An application for injunctive relief is addressed to the conscience of the chancellor, who may in the exercise of sound discretion either grant or deny the prayer as the circumstances require.[7] The court will consider the equities between the parties and under some circumstances deny equitable relief, because a great injury will be suffered by defendant because of a mandatory injunction, with little or no benefit to complainant.[8]

The matter here for decision bears a distinct factual similarity to *City of New Orleans v. Levy*.[9] There the City sought a mandatory injunction to compel defendant to remove a plastic roof. The roof was in violation of a zoning ordinance because it covered an entire courtyard. The ordinance required 20 per cent of the space to be open. The record disclosed the existence of similar violations against which no injunction had been sought. The court noted five specific parcels in the vicinity, where the courtyards were completely covered.

The court denied the injunction sought by the City, because of its discriminatory practices in enforcement of the ordinance. It pointed to these acts of discrimination, noting them as violations of principles of equity:[10]

. . . it is axiomatic that while a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from litigants who come before it as plaintiffs in such controversies. This fundamental principle is expressed in the maxim: "He who comes into a court of equity must come with clean hands."

This doctrine universally affects the entire administration of equity jurisprudence as a system of remedies and remedial rights.

It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of courts of equity to suppress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. . . .

Having originally held that the City of New Orleans practiced specific instances of unfair discrimination, pursuing a course of conduct naturally calculated, if not deliberately intended, to bring about the very conditions which led it to the portals of equity, we, as a court of equity, will be closed and the said applicant held remediless.

Finally, defendant contends that there was insufficient evidence to support the finding he had violated Section 22–16–7, Salt Lake County Ordinance. The finding that the average setback was 26 feet was based on the testimony of Marvin D. Jeffs, who testified he determined this average by measuring all the houses on one side of the street, excluding the corners.

Section 22–1–6(31), Salt Lake County Ordinances, provides:

FRONTAGE. All property fronting on one (1) side of the street between intersecting or intercepting streets, or between a street and a right of way, waterway, end of dead end street, or political subdivision boundary, measured along the street line. An intercepting street shall determine only the boundary of the

6. 17 McQuillin, Municipal Corporations (1967, Rev.Vol.), Section 49.57, p. 303.

7. *Shell Oil Co. v. Stiffler*, 87 Utah 176, 48 P.2d 503 (1935).

8. *Mary Jane Stevens Co. v. First National Building Co.*, 89 Utah 456, 517, 57 P.2d 1099 (1936).

9. 233 La. 844, 98 So.2d 210 (1957).

10. Page 218 of 98 So.2d.

frontage on the side of the street which it intercepts.

Defendant's claim is well taken, since there is no evidence in the record which establishes why the corners were excluded in deriving the average setback.

 In the instant action, the effect of the order of the trial court is to destroy for all practical purposes an enclosed carport valued at $2,000. Witnesses for the county conceded at least six similar violations of the setback ordinance within the vicinity of defendant's property, and there was no evidence to indicate any attempt to enforce the zoning law in these other instances. The discriminatory manner in which the ordinance has been enforced by plaintiff is a sufficient ground to deny equitable relief. A mandatory injunction will never be granted where it might operate inequitably or oppressively.[11]

 The method of service of notice on defendant deserves attention. Here plaintiff dealt with valuable property rights. Such a situation requires a better method for service of notice than that employed by a distributor of handbills. Who could be reasonably sure that a handbill stuck inside a screen door would be received, or noted, if it were?

It has been said that to satisfy the constitutional requirement of due process, the notice afforded should be such as is likely to be received and plain to understand. The means employed to give notice must be such as one desirous of actually informing a person to be notified might reasonably adopt to accomplish it. The fundamental test is whether the notice is fair and just to the parties involved . . . .

Actual knowledge cannot operate as a substitute for notice required by due process of law; hence, extraofficial or casual notice is not sufficient. . . . The criterion is not whether any injury to an individual is possible, but whether the requirement as to notice and opportunity to protect property rights affected is just and reasonable.[12]

The method of service employed here did not deserve the kind of response plaintiff claims its notices did not get.

ELLETT and TUCKETT, JJ., concur.

HENRIOD, Chief Justice (dissenting):
I dissent.

Taking the main opinion at face value and accepting the facts stated therein, — and the law,—and the equity,—and the justice,—and etc.,—all that remains is an intentional flouting of the zoning ordinance by appellant without inquiry of any kind as to condition precedent, with an attendant attempt to justify it by claiming that city agents, who had no duty to do so in the first place, did not discourage one bent on establishing an unauthorized zoning variance, in time and manner not to the liking of the appellant.

No maxims of equity are necessary in this case except, perhaps, that equity frowns on a violator's plaint that others derelict failed to prevent his deviation from the ordinance,—thus justifying and condoning his violation.

The main opinion simply justifies such a violation of law because others have done so.

The mandate of the main opinion, as amended, says "We reverse the order *requiring the destruction of the improvement*[1]; and affirm the order requiring a building permit, payment of the permit fee and penalty." It is obvious that the main opinion condones a violation of

---

11. *Peck v. State ex rel. Department of Highways* (Okl.), 350 P.2d 948 (1960).

12. 16 Am.Jur.2d, Constitutional Law, Section 562.

1. Which so-called "improvement" is not an improvement at all, since it represents an illegitimate invasion of the rights of neighbors and governmental agents to rely upon and have enforced the zoning restrictions duly legislated by proper authority.

the law when it concedes that the *penalty* must be recognized and imposed.

The mandate of the main opinion, as amended, is an *obvious distortion of the* trial court's words and judgment, which were not as represented in the opinion; when the trial court adjudged that defendant

> . . . shall remove a minimum of 6.5 feet of the west portion of his carport . . . . [and] shall apply for a building permit and shall pay the required permit fees for any portion of his carport addition which may remain after

compliance with paragraph 1 of this order.[2]

The diversionary mandate of the main opinion seems obvious in decreeing an unlawful act to be a lawful one simply because others had violated the law and municipal agents adequately had not given some kind of notice that they need not have had to give in the first instance.

The trial court should be affirmed.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of

HENRIOD, C. J.

---

2. Obviously meaning a building permit and payment of fees for a *lawful* construction of a carport,—*not* an *unlawful non*-compliance with the ordinance.