PROVO CITY, a Municipal Corporation, Plaintiff and Respondent,

v.

Joel HANSEN and Sharon Hansen, his wife, and Oliver F. Hansen and Ruth Hansen, his wife, Defendants and Appellants.

No. 15437.

Supreme Court of Utah.

Oct. 4, 1978.

Joel F. Hansen, pro se.

Richard D. Bradford, Provo, for plaintiff and respondent.

PER CURIAM:

This is an appeal from an injunction against housing more than four students in the Brigham Young University area, in Provo, Utah, in violation of the city's ordinance R–1–8(S), Secs. 24.20 and 24.72.

In 1975 the defendant Joel Hansen enrolled in the law school, and took residence in a house recently purchased by his mother for living and income purposes while at law school. He rented parts of the house at different times to from seven to eleven single students in alleged violation of the ordinance which restricted such rentals to four single male students. Shortly thereafter someone called the situation to the city's attention, and in turn, Mr. Hansen's attention was called to the provisions of the ordinance and he was asked to conform. He requested a variance (until he graduated in April, 1978) and ultimately refused to comply because the city did not pursue other violations in the area. Mr. Hansen, by motion after appeal, asked for a stay of execution which was granted, and which as of now has the effect of exceeding the time he requested for a nonconforming use.

Mr. Hansen urges that Provo City had a continuing policy of permitting known violations of the ordinance by others, unless the neighbors objected, and that is the sole basis for his refusal to conform, saying that equity prevents the city from enforcing the ordinance against *him*. The basis for this thesis: six instances that he assumes established a policy denying the city access to a court of equity and an injunction against a person like he happened to be—one coming into the area with a claim to an ex post facto privilege to violate the ordinance as others have done. His indictment of the city has some imperfections, not the least of which is a departure from orderly appellant's review by reporting evidence that serves only *his* thesis, in that his statement of the facts does not fairly summarize the evidence presented at trial. A short synopsis of the instances upon which he relies has to do with six householders, to wit:

1. *Symons*: Most of the rentals occurred over 20 years before, during a different administration, and the rentals had to do with "apartments," not covered by the ordinance, at that time. Mrs. Symons upon being notified of the then zoning ordinance about "roomers," took the position that she had a nonconforming use,—and probably did since there was no evidence that the city should thereafter check her out for violation of the above ordinance (which admittedly she did subsequently violate). She further said that when the problem came up, she changed to four students, not only because of the problem but because the Bishop asked the people to comply.

2. *Todd*: The Todds bought in 1973, rented to seven or eight students, unaware of the ordinance. When the matter came up in March, 1975, the zoning officer, Gardner sent Todd a letter. Todd called the former, who apologized for the tone of the letter, and according to Todd's notes, he Todd, explained the parking and student set-up; that the neighbors had not complained; and was told the matter would be closed by administrative decision, unless he had complaints from the neighbors. He talked to Gardner again, gave him some hypothetical questions, one of which was about a husband and wife with a large family, the children grew up, the husband dying, etc. He said Gardner was very sympathetic. Later Mrs. Todd told the zoning enforcement officer that they had only four students and it was not until this trial that Mr. Todd admitted having five.

3. *Cedarcrest*: Was a large apartment on the hillside, and litigation had been pursued between the city and the complex in the courts and Gardner, the zoning man said he had nothing to do with it, and consequently did not check it out.

4. *Dastrup*: The zoning officer said he "believed" that the property had more than four renters in the last two years, and that he was preparing a court case with respect to the Dastrup property.

5. *Payne*: Said he was acquainted with the student rental problem, that the city contacted him and "warned against more than four in the dwelling, and we cut down to four." He testified that his wife said that "whoever" came to look over the house said, "as long as there's no complaints we won't bother you." Payne testified, however, that "They gave us a period of time," as it was school time and that "as they left (students), to not re-rent, to cut down to four; which we complied to."

6. *Blair*: The Blairs were given to the end of the semester. Mrs. Blair said, "We did at one time have five renters until we found out we were in violation, and then we went to four."

On the basis of this quantum and quality of evidence the trial court said:

The Court specifically finds in this case that the purpose of the occupancy ordinance has not been abrogated or annulled by the policy of the City proceeding primarily on a complaint basis, and that that policy is neither "naturally calculated" nor "deliberately intended" to bring about non-compliance. On the contrary, the Court believes the policy of the City has been toward securing compliance with the least harassment, and least interference with owners in the use of their properties.

Mr. Hansen relies almost entirely on *Salt Lake County v. Kartchner*, Utah, 552 P.2d 136 (1976) to support his contentions. In *Salt Lake County v. Kartchner*, this Court reversed a court order requiring destruction of an already completed carport which was built in violation of a zoning ordinance and without a building permit. A city building inspector testified that he observed the carport under construction at a point in time approximately nine months before Kartchner was first personally contacted by a county zoning inspector. Although the building inspector said he left notices at Kartchner's residence when he first observed the condition and again at a later time, the county zoning inspector did not contact Kartchner until the carport was nearly completed. The evidence at trial also showed that in the immediate vicinity of Kartchner's home there were six structures in violation of the zoning ordinance,

and that there had been no attempt to contact the owners about these violations. Kartchner was the only one of those people ever to be contacted or prosecuted.

In the instant case, the record is clear that a zoning violation complaint triggered enforcement action in every case discussed at trial. There is no discriminatory enforcement proved by Mr. Hansen.

There is more than ample evidence to sustain the trial court here, such being the case, there should be affirmance, and sustaining of the following conclusion of the court:

> The evidence is insufficient for the Court to find that any discriminatory enforcement of the Zoning Ordinances relating to occupancy has occurred or is now occurring which precludes enforcement against the defendants herein on any constitutional, equitable or other compelling basis. The Court is of the opinion that the case of *Salt Lake County v. Kartchner*, 552 P.2d 136, is not to the contrary. The equitable considerations there are not present in the instant case. The Court cannot and does not find from the evidence that there has been any injustice, unfairness or unrighteous dealing on the part of the plaintiff in this case.

The judgment of the trial court is affirmed.

No costs awarded.

CROCKETT, Justice (concurring with comments):

I do not agree with the idea that where one is violating a law or an ordinance, it is any less a violation because others are also in violation. Neither do I believe that one who is shown to be guilty of such a violation can exculpate himself by insisting that those attempting to enforce the ordinance must first apprehend and convict others. I therefore agree with the main opinion.

ELLETT, Chief Justice (dissenting):

This is an appeal from the granting of an injunction against Mr. Hansen for housing more than four students in violation of Provo City ordinance R–1–8(S), sections 24.-20 and 24.72. Mr. Hansen rented rooms in a house given to him by his mother as a means of earning money to finish his law studies at the University.

The basis of the appeal is that Provo City has a policy of permitting known violations of the ordinance unless and until the neighbors object. If such a state of affairs exists there would be a denial of equal protection of the law. The city would not be uniformly enforcing its ordinance but would leave it to neighbors to decide whether or not to prosecute.

The claim of the appellant seems to be well founded. The testimony of the zoning administrator for Provo City was that he was in charge of the enforcement of the zoning ordinances. On cross examination he testified as follows:

Q  Since September of 1974 you have been in charge of enforcement of the zoning ordinance?

A  Yes.

Q  During that period of time isn't it a fact that the only means or procedure for enforcing this zoning ordinance has been in response to complaints registered with the City?

A  That's our procedure.

Q  And your policy and procedure does not provide for any organized method of determining violation of the ordinance except to respond when people complain about violations?

A  No organized method, but if we see an obvious violation we check it out.

Q  But almost exclusively you have been complaint responsive in your enforcement?

A  Yes.

Q  There are no procedures for enforcement except that?

A  That's right.

Q  That of responding to complaints?

A  That's right.

Q  During this period of time you have become aware of numerous circumstances in the City of landlords who have renters

and do not comply with the zoning ordinances, isn't that correct?

A   Oh, yes.

This is an equity case and on appeal this Court is not obligated to follow the findings of the trial court.  We may make our own findings of fact, and we should do so when it appears that justice requires that it be done.[1]

I think that the method of enforcing the zoning ordinances by the plaintiff herein is arbitrary and does not afford the equal protection of the law as required by Article I, section 2 of our Constitution.

I would reverse the judgment of the trial court.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of ELLETT, C. J.

1.  Const. of Utah, Art. VIII, Sec. 9; *First Security Bank of Utah v. Demiris*, 10 Utah 2d 405, 354 P.2d 97 (1960).