483 So.2d 1123 (1986)
NORMAL LIFE OF LOUISIANA, INC.
v.
The JEFFERSON PARISH DEPARTMENT OF INSPECTION AND CODE ENFORCEMENT and the Parish of Jefferson.
No. 85-CA-537.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 1986.
James A. Gray, II, Jefferson, Bryan & Gray, New Orleans, for plaintiff/appellant.
H.A. Vondenstein, Parish Atty., Louis G. Gruntz, Jr., Asst. Parish Atty., Gretna, for defendants/appellees.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
BOWES, Judge.
Normal Life of Louisiana, Inc., plaintiff in the original action, appeals a judgment of the district court granting a preliminary and then permanent injunction, declaring that plaintiff may not open or operate its community home without prior approval of the Jefferson Parish Advisory Board and the Parish Council. For the reasons which follow, we affirm the judgment.
Normal Life of Louisiana, Inc. is a company which contracts with the State to provide residential living alternatives for mentally retarded individuals under Chapter 4 of Title 28 of the Louisiana Revised Statutes. On November 20, 1984, the Jefferson *1124 Parish Department of Inspection and Code Enforcement issued a permit to Normal Life to construct a community home at 828 Behrman Highway. The lot in question was zoned R-2, for two family dwellings. The Parish was informed that the house would be used as a community home within the meaning of La.R.S. 28:380 et seq.[1] A sworn affidavit submitted by plaintiff states that extensive discussions were held with the parish attorney's office after which the permit was issued. Approximately one week before construction was completed, the Parish attempted to halt construction claiming that the building was not being constructed as per revised approved plans. A temporary restraining order enjoining the Parish from interfering with the construction was issued and the building was completed.
Subsequently, the Parish filed a reconventional and third party demand for declaratory judgment and for preliminary and permanent injunctions. The demand stated that Normal Life failed to comply with R.S. 28:475-478[2] in failing to receive prior approval from the Planning Advisory Board and the Jefferson Parish Council; that Normal Life was also violating the parish zoning ordinance by attempting to place a community home in a residential district zoned "R-2"; and that consequently plaintiff should be enjoined from operating the premises as a community home.
After a hearing, the trial court found that plaintiff failed to comply with R.S. 28:478(C) in failing to submit its intent to open the community home to the Parish Advisory Board and to the Parish Council for approval, and so enjoined the operation *1125 of the home until its complaince. The Court also declared that operation could not commence without prior approval of the Advisory Board and Parish Council.
On appeal, Normal Life urges that La. R.S. 28:478(C) is unconstitutional as applied to the facts of this case. After consideration of the applicable law and jurisprudence, we conclude that La.R.S. 28:478(C) is not unconstitutional as applied to Normal Life in this situation.
The Comprehensive Zoning Ordinance of Jefferson Parish contains the following pertinent definitions:
FAMILY:
One or more persons related by blood or marriage living together and occupying a single housekeeping unit with single culinary facilities or a group of not more than four persons living together by mutual agreement and occupying a single housekeeping unit with single culinary facilities on a non-profit cost sharing basis.
Appellee contends that there is no specific definition nor provision for anything designated a community home in the ordinance.
We agree that there does not appear to be any definition of "community home", except in LSA R.S. 28:381(8) which states:
"Community home" means residential living options that are certified, licensed, or monitored by the department to provide residential services to fifteen or fewer mentally retarded or developmentally disabled individuals. Community homes that provide for six or fewer mentally retarded or developmentally disabled individuals, with no more than two live-in staff, shall be considered single family units having common interests, goals, and problems. A community home that provides residential living options for seven to fifteen mentally retarded or developmentally disabled individuals shall be referred to as a group home.
Similarly, R.S. 28:477(1) has this definition:
"Community home" means a facility certified, licensed, or monitored by the Department of Health and Human Resources to provide resident services and supervision to six or fewer handicapped persons. Such facility shall provide supervisory personnel in order to function as a single family unit but not to exceed two live-in persons.
This Court, in City of Kenner v. Normal Life of Louisiana, Inc., 465 So.2d 82 (La.App. 5th Cir.1985), held that the definition of a community home as a single family unit was not intended to override zoning ordinances which limit the number of unrelated people in the definition of "single family." Applying that concept to the present case, it is clear that the home, designed to provide facilities for 6 adults, plus two staff counselors, does not meet the Parish ordinance's definition of a family, as defined hereinabove.
In a district zoned R-2, the Zoning Ordinance permits (in pertinent part), any use permitted in an R-1 Single Family district and also Two-Family dwellings.
A "Two-Family Dwelling" is defined as a building "designed for or occupied exclusively by two (2) families." The home in question does not meet this requirement. Nor does the home meet the criteria of any buildings which are for uses described as permitted in an R-1 district. Therefore, the community home planned by Normal Life is not a permitted use, within the contemplation of the ordinance, in an R-2 district.
We agree with the defendant that the closest definition applicable to the home is that of a boarding house, "a building other than a hotel where, for compensation and by prearrangement for a definite period, meals or lodging and meals are provided for three (3) or more persons, but not exceeding twenty (20) persons."[3]
*1126 A boarding house is a permitted use in an R-3 "Multiple Family Residential District."
Use exceptions and variances must be approved by the Zoning Appeals Board. Applications for special permitted uses must be filed with the Parish Council through the Planning Department. In other words, any building or use exception must be approved by the local board and/or governing authority. This is a very similar procedure to La.R.S. 28:478, which states:

Promotion of community based homes
A. In order to achieve uniform statewide implementation of the policies of this Title and of those of the mental retardation law and of the mental health law, it is necessary to establish the statewide policy that community homes are permitting by right in all residential districts zones for multiple-family dwellings.
B. The department shall establish appropriate standards with interpretative guidelines and establish monitoring procedures. In no case shall a community home be placed within a one thousand foot radius of another community home.
C. The local sponsor shall notify the local governing authority of his intent to file an application to the department to open a community home. In any area over which a local planning commission has jurisdiction the site selection shall first be submitted to the local planning commission, which shall recommend approval or disapproval of the site to the local governing authority. The local governing authority shall then affirm or reverse the decision of the planning commission by a majority vote of its entire membership, within forty-five days of the date of the original notification to the local planning commission. In any area in which there is no local planning commission, the local governing authority shall approve or disapprove the site within forty-five days from the date of the original notification to the local governing authority. Whenever the local governing authority has disapproved the site, the local sponsor and the department may develop an alternate site selection for the community home which is acceptable to the local sponsor, the local governing authority, and the department.
The statute places essentially the same burden on a sponsor seeking to open a community home as the parish zoning ordinance places on anyone seeking a variance or exception. Since the community home is not a permitted use under the ordinance in an R-2 area, Normal Life would be obliged to request an exception or variance, as would any party seeking to operate a boarding house in an R-2 district.
This situation is the opposite of that found in City of Cleburne, Texas vs. Cleburne Living Center, ___ U.S. ___, 105 S.Ct. 3249, 87 L.Ed.2d 313 in which no special use permit was required for the operation of multiple dwellings, boarding houses, etc., except for that of the defendant. There, the U.S. Supreme Court decided that the City of Cleburne could not require a permit for such a facility for the handicapped when other similar facilities were freely permitted.
Our Louisiana Supreme Court, in Clark v. Manuel, 463 So.2d 1276 (La.1985), declared R.S. 28:478(C) unconstitutional as applied to the use of property in an unzoned district. The Court stated:
We know of no other owner or lessee of property in this state not adversely affected by zoning restrictions who is similarly required to secure approval of a local governing authority before putting property to a legal use.10 The Legislature has seen fit, however, to require those who would use property as a community home for mentally retarded persons first to secure approval from the local governing authority before establishing a community home. The Legislature may normally, of course, discriminate in their regulatory enactments. They may not, however, run afoul of the equal protection clauses of the United States and Louisiana Constitutions.
*1127 Clark is clearly distinguishable from the present case. Unlike Manuel, any owner or lessor in Jefferson Parish is required to secure approval of a local governing authority before attempting a special use, exception or variance.
The statute as applied to the facts of this case does not violate the equal protection clause of the Constitution since it creates no material distinction between the plaintiff and any similarly situated party under the zoning laws.
For the foregoing reasons, the judgment appealed from is affirmed. Costs are taxed to appellant.
AFFIRMED.
NOTES
[1] The Mental Retardation and Developmental Disability Law which provides for the rights of mentally retarded and developmentally disabled individuals in Louisiana. This section outlines state policy and individual rights of such persons.
[2] § 475. Short title

This Chapter shall be known and may be cited as the Group Home for Handicapped Persons Act.
Added by Acts 1981, No. 892, § 1, eff. Aug. 2, 1981.
Title of Act:
An Act to amend Title 28 of the Louisiana Revised Statutes of 1950 by adding thereto a new Chapter, to be designated as Chapter 5 thereof, comprised of R.S. 28:475 through R.S. 28:478, to provide relative to the promotion of community facilities for the care of mentally and physically handicapped persons, to allow small community homes to be permitted in all residential districts zoned for multiple-family dwellings, and otherwise to provide with respect thereto. Acts 1981, No. 892, eff. Aug. 2, 1981.
§ 476. Declaration of policy
The legislature hereby declares that it is the policy of this state as declared and established in this Title and in the mental retardation law and in the mental health law that mentally and physically handicapped persons are entitled to live in the least restrictive environment in their own community and in normal residential surroundings and should not be excluded therefrom because of their disabilities. The legislature further declares that the provisions of this Chapter are intended to secure to all of the citizens of this state the right to individual dignity as provided in Article I, Section 3 of the Constitution of Louisiana and to protect the rights and promote the happiness and general welfare of the people of this state. To that end, the legislature hereby declares that the provisions of this Chapter are an exercise of the police power reserved to the state by Article I, Section 4 and Article VI, Section 9(B) of the Constitution of Louisiana.
Added by Acts 1981, No. 892, § 1, eff. Aug. 2, 1981.
§ 477. Definitions
As used in this Chapter, unless otherwise clearly indicated, these words and phrases have the following meanings:
(1) "Community Home" means a facility certified, licensed, or monitored by the Department of Health and Human Resources to provide resident services and supervision to six or fewer handicapped persons. Such facility shall provide supervisory personnel in order to function as a single family unit but not to exceed two live-in persons.
(2) "Department" means the Department of Health and Human Resources.
(3) "Handicapped Person" means any person who has a physical or mental impairment which substantially limits one or more of the following major life activities: 1) self care; 2) receptive or expressive language; 3) learning; 4) mobility; 5) self direction; 6) capacity for independent living; 7) economic self sufficiency. This definition shall not include persons handicapped by reason of drug abuse or alcohol abuse, nor shall it apply to handicapped persons currently under sentence or on parole from any criminal violation or who have been found not guilty of a criminal charge by reason of insanity.
Added by Acts 1981, No. 892, § 1, eff. Aug. 2. 1981.
[3] We note that in Normal Life's application for a building permit, the home was characterized by Normal Life as a "Community Home Board or Lodge [sic] Home."